Case number 20-7110. In re, Larry Elliot Klayman. Mr. Klayman, for the respondent. Mr. Klayman. Larry Klayman. Good morning. Please proceed. For myself, thank you, and may it please the court, Judge Henderson, Judge Tatel, congratulations on your senior status, and also Judge Edwards. I want to pose this question to the court. May it please the court. I left Judicial Watch back in 2003, I left it in the hands of a non-lawyer, and there were three particular clients and individuals that were seriously affected when I left. One of them was Louise Benson, who was like my surrogate mom, and she had donated $15,000 and pledged 50 to buy an office at Judicial Watch. Judicial Watch misappropriated that money. There was another client, Peter Paul, who we had agreed that we would try to help, came forward with information as a whistleblower. Judicial Watch abandoned that client as well. And then of course, there was Sandy Kovas, office manager in Miami, and she was harassed. All of these three individuals had lawyers, but they could not afford to continue on. As the head of a public interest group, I felt I had an ethical duty, notwithstanding all the legal and factual arguments that we've made in the brief, and I'm sure you've read them, so I don't need to belabor that unless you want me to. But Professor Ronald Rotunda, a renowned ethics expert, took a look at the situation. He issued an opinion. It was admitted into the record of this case before the D.C. Disciplinary Council, and then of course, the Board of Professional Responsibility. And he said that I did not commit an ethics violation. This case is now 13 years old. There's probably not another bar in the country that would have a case that would last so long. Most of them have either precedent on latches, Texas statute of limitations. It's a very, very old case. I have also served the 90 days. In fact, I withdrew from this court out of respect for that time, when I also withdrew from other courts. So it's over, and- Mr. Klinman, let me ask you a couple of questions. You don't deny that, okay, let's start with the Benson case. You don't deny, right, that while at judicial watch, you solicited that contribution and worked with her on it, right? I solicited, yes, no, I don't deny that. I solicited it as a lawyer.  I just want to make sure I understand the facts, and that without any consent from judicial watch, right, you represented Benson in litigation to recover that same money, right? That's correct. Okay. At some point. And also, with respect to the Paul case, while at judicial watch, you represented judicial watch in negotiations with him. And then again, without consent from judicial watch, you entered appearances in a case against judicial watch regarding that same one, right? That's correct. Okay. So, as Judge Lambert says, these are, this is just a classic violation of the, of D.C. Ethics Rule 1.9. I mean, 1.9 is crystal clear. It says that a lawyer is formally represented a client in a matter. That's you, shall not represent. There's no exception to this at all. There's no exception for the client being unable to find a lawyer. There's no exceptions for public interest lawyers. I don't, I guess, like Judge Lambert, I guess I don't see any way in which you've satisfied your burden under our rule to show that this decision by the D.C. Court of Appeals is somehow not supported by evidence. Your Honor, you raised a good question, which I wanted to raise. Is that number one, Judge Lambert said there was some ambiguity, understood why I stepped in to help these people. Number two- He said, excuse me, Mr. Clement, he said there was some ambiguity with respect to the question of what would happen to the client if you withdrew. There was no ambiguity in his mind about your violation of the D.C. rule. Let me get to the major point if I may. Let's just, no, let's just finish this. He said, do you see my point about that? He said, let me find what he said. I'm not disputing what he wrote. He wrote what he wrote, Your Honor. No, but do you understand my point? This is, he was troubled by the fact that allowing you to withdraw would leave someone unrepresented, but he wasn't at all ambiguous about your violation of the D.C. rule, right? You agree with that, right? He was not ambiguous about that, but let me also raise this. He also showed up without a subpoena to testify on my behalf at the- Who showed up? Who showed up? Lambert, Judge Lambert testified on my behalf. You can go back into the record and see that. He showed up what? He came voluntarily to testify on my behalf. And here's what he said- Mr. Clement, the question before us is whether you have satisfied your burden under our rule to show that this sanction is not supported by substantial evidence. If I may respond- Sure, please, go ahead. Judge Lambert testified at the disciplinary hearing that he did not refer the matter to bar counsel because he didn't think it rose to that level. He's actually referred many lawyers to that level. He did not sanction me. And when I was disqualified and I'd actually had advice of counsel, that's in the opinion of the DC Court of Appeals, that I was not in fact committing an ethical violation, I ceased representing the other two clients as well, immediately. So I did my obligation. I respected Judge Lambert's order and I moved on. But I posed that question- Here's what Judge Lambert said in his written order. Quote, the court can simply not condone such a flagrant violation of professional responsibility essential to the proper functioning of our system of justice. That's what Judge Lambert said. And he did not sanction me because he understood there were- The only question before Judge Lambert at that point was whether to permit you to withdraw. That was- Well, here's the question before you, Your Honor. Yeah, go ahead. The question before you is, these individuals were unrepresented. They were being harmed by, Judicial Watch was being run by non-lawyer, Tom Fitton at the time. I felt, as someone who started an ethics organization, Judicial Watch, I had a duty as a matter of last resort to try to help them pro bono. But more importantly than that, I hope that you will read the opinion of Ronald Rotunda, which is attached to the Court of Appeals. We've all read that opinion. In fact, I knew Ronald Rotunda. So- Yeah, he was a great man. I knew him when he was a young lawyer at Wilmer. We worked together on some civil rights matters. I knew Ronald Rotunda. Yes. And I've already served my time here, Your Honor. I was outside of the court for 90 days. Let's talk about that for a minute. You served your time because you voluntarily didn't handle cases in the D.C., in the federal courts for 90 days, right? Is that your point? I actually filed pleadings withdrawing during that period of time from the D.C. Circuit. Am I right also, Mr. Klayman, that you didn't do that until after we were notified by the D.C. Court of Appeals that you had been sanctioned? I had a, I don't remember the timing specifically, but I do know this. I was challenging that. I was asking for that order to be reconsidered. Okay, but you know what rule, our disciplinary rule 10 requires lawyers to notify this court when they've been sanctioned by another court, right? Did you do that? I understand that now, Your Honor. Did you do that? No, okay. No, I did it ultimately. I did ultimately. Look, Your Honor, here's the thing. Did you do it, Mr. Klayman, did you do it before we issued, before we were notified by the Court of Appeals? I don't know that you were notified. I don't recollect whether you were notified by the Court of Appeals. I know that what we have here, you were notified by the Court of Appeals. Did you do it? You were notified. I did it ultimately. Yes, I did, Your Honor. You did it in response to our order to show cops. I don't remember the specific timing. So let me just ask you a fact question. Are you now representing anybody in the federal court, D.C. federal court, or in our court at this point? Yes, I have a case with Laurie Loon, who is in front of you right now. It's ripe for a decision in front of the D.C. Circuit right now. And when was that? And there was an oral argument set for another client, two clients by the name of Lavellian and also Stewart with regard to a matter involving the Bundy standoff. Okay, so that is in court, but I've taken no action in those cases. But the point is your counsel of record in, just your counsel of record in which cases? Now just repeat them for me, please. Laurie Loon versus Fox News and Suzanne Scott. And that's in our court. Lavellian and Stewart versus FBI, I believe it is. I don't remember who the lead defendant is. And if your honor suspends me for 90 days, I will obviously withdraw from those cases. So I respect that. But if I may add one other thing. Sure, go ahead. Okay. I had asked, D.C. Bar Council, like everything else, unfortunately, in a city that we all love has become very, very partisan. We know what's happening. 13 years. Well, wait a minute, Mr. Klayman. Wait, Mr. Klayman. I mean, that's a pretty serious accusation. Do you, I mean- Your honor, you can read the newspaper and see it. Well. Okay. Mr. Klayman. All the former Bar Presidents, let me finish. All the former Bar Presidents of D.C. Bar filed a complaint against Attorney General Bill Barr for withdrawing the indictment against General Flynn and remarks he made on Fox News. Kellyanne Conway got a Barr complaint. As far as I know, it's still going on for what she said on MSN-NBC. Wait a minute. What is that got to do? What I'm saying is this case was resurrected. This case was resurrected. All right, let me stop this. I've heard enough. Judge Edwards, do you have any questions? No, I have no questions. All right. Judge Tatel, unless you have something you want to follow up on. Yeah, hold on just one second. Point I'm making, can I say one thing, Judge Henderson? No, you cannot. No, okay. Judge Henderson, I'm through. I'm finished. Thank you. Can I say one last thing, Your Honor? All right. Yeah. The case wasn't started for eight years. Any other jurisdiction in this country would not have started a case eight years into it, and now it's 13 years, just on the basis of latches alone. And the fact that I do respect this court, and I do respect the Barr. I started Judicial Watch because I believe in ethics in government. I respectfully request that I not be given an additional 90 days, much like the Ninth Circuit decided not to do, because they also entertained an order to show cause such as the one in front of this court. But the case is now 13 years old. And I hope, Your Honor, that you will write something to give advice to the District of Columbia Barr disciplinary apparatus. The cases should not linger for 13 years and be resurrected after eight years. And that's what I meant. And everybody knows who I am. Everybody knows I'm a strong advocate. Everybody knows I've taken strong positions. Okay, much like Attorney General Barr. Mr. Klayman, let me just ask you one question. I know we need to move on here, but you did argue latches, you argued due process, but I didn't see any evidence at all, any citations to anything to suggest that whatever the delay was, that it in any way prejudiced you. It was, Your Honor. You said you couldn't introduce documents. You said you couldn't introduce witnesses, but you agreed with me at the beginning of your argument this morning that you represented three clients in litigation against Judicial Watch on matters that you had consulted, that you had advised Judicial Watch on without their consent. There doesn't need to be any more evidence. That's it. Well, Your Honor, I respectfully disagree. There's a matter of equity here too. And there's always a matter of equity and judges have to consider that as well. Okay, I have no further questions. We have your argument, Mr. Klayman. Thank you. Madam Clerk, would you call the next case?
judges: Henderson, Tatel, Edwards